UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL ELIZABETH WALASHEK, Individually and as successor-in-interest to THE ESTATE OF MICHAEL WALASHEK and THE ESTATE OF CHRISTOPHER LINDEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | Case No.: 14cv1567 BTM(BGS)<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT BY LAMONS GASKET COMPANY AND PARKER-HANNIFIN CORPORATION** |

Defendants Lamons Gasket Company f/k/a Lamons Metal Gasket Company ("Lamons") and Parker-Hannifin Corporation ("Parker") have filed motions for summary judgment. For the reasons discussed below, Defendants' motions are **GRANTED**.

## I. BACKGROUND

On June 17, 2014, Plaintiffs commenced this wrongful death and survival action in state court. On June 27, 2014, this action was removed to federal court.

The Complaint alleges that Michael Walashek's exposure to asbestos and asbestos-containing products, in the course of performing his work for various employers, caused him to suffer severe and permanent injury and ultimately death. The Complaint asserts claims of negligence and strict liability.

Michael Walashek was a career boilermaker. Plaintiffs allege that between 1967 and 1986, Walashek was exposed to asbestos while performing maintenance, repair, overhaul, break-down, and rebuilding of boilers and associated equipment installed on naval, commercial, and industrial vessels. Walashek performed his work aboard vessels, including the USS Kitty Hawk and USS Constellation, as well as in repair shops at various land-based sites.

In March 2013, Walashek was diagnosed with malignant mesothelioma. Walashek died later that same month at the age of 64. Walashek is survived by his wife, Gail Walashek, and his adult children.

## II.  **STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. <u>Anderson v. Liberty Lobby</u>,

1  Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.
2  1997).  A dispute is genuine if a reasonable jury could return a verdict for the
3  nonmoving party.  Anderson, 477 U.S. at 248.

4       A party seeking summary judgment always bears the initial burden of
5  establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at
6  323.  The moving party can satisfy this burden in two ways: (1) by presenting
7  evidence that negates an essential element of the nonmoving party's case; or
8  (2) by demonstrating that the nonmoving party failed to establish an essential
9  element of the nonmoving party's case on which the nonmoving party bears the
10 burden of proving at trial.  Id. at 322-23.  "Disputes over irrelevant or unnecessary
11 facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v.
12 Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

13      Once the moving party establishes the absence of genuine issues of material
14 fact, the burden shifts to the nonmoving party to set forth facts showing that a
15 genuine issue of disputed fact remains.  Celotex, 477 U.S. at 314.  The nonmoving
16 party cannot oppose a properly supported summary judgment motion by "rest[ing]
17 on mere allegations or denials of his pleadings."  Anderson, 477 U.S. at 256.  When
18 ruling on a summary judgment motion, the court must view all inferences drawn
19 from the underlying facts in the light most favorable to the nonmoving party.
20 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Both Lamons and Parker (collectively "Defendants") move for summary judgment on the ground that Plaintiffs cannot establish that Michael Walashek was exposed to asbestos from one of their products. As discussed below, the Court agrees that Plaintiffs have failed to raise a genuine issue of disputed fact regarding Michael Walashek's threshold exposure to Defendants' asbestos-containing products. Therefore, Lamons and Parker are entitled to summary judgment.

A. <u>Governing Law</u>

In asbestos-related latent injury cases, the plaintiff "must first establish some threshold *exposure* to the defendant's defective asbestos-containing products." <u>Rutherford v. Owens-Illinois, Inc.</u>, 16 Cal.4th 953, 982 (1997). The plaintiff bears the burden of proof on the issue of threshold exposure. <u>McGonnell v. Kaiser Gypsum Co., Inc.</u>, 98 Cal. App. 4th 1098, 1103 (2002). "If there has been no exposure, there is no causation." <u>Id.</u>

"The mere 'possibility' of exposure does not create a triable issue of fact." <u>Andrews v. Foster Wheeler LLC</u>, 138 Cal. App. 4th 96, 108 (2006). "It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment." <u>McGonnell</u>, 98 Cal. App. 4th at 1105. "'[P]roof

4

14cv1567 BTM(BGS)

that raises mere speculation, suspicion, surmise, guess or conjecture is not enough to sustain [the plaintiff's] burden' of persuasion." Izell v. Union Carbide Corp., 231 Cal. App. 4th 962, 969 (2014) (quoting Ulwelling v. Crown Coach Corp., 206 Cal. App. 2d 96, 104-05 (1962)).

B. Lamons

Plaintiffs contend that Michael Walashek ordered, installed, and removed Lamons spiral-wound gaskets made with asbestos. However, the evidence submitted by Plaintiffs does not support their claim.

### 1. Lamons Establishes Absence of Genuine Issue of Material Fact

In support of its motion for summary judgment, Lamons points to Plaintiffs' discovery responses and other discovery, which show that Plaintiffs lack evidence that Michael Walashek was exposed to asbestos-containing Lamons gaskets during the course of his work as a boilermaker.

In response to Special Interrogatory No. 1, which requested all facts supporting Plaintiffs' contention that Walashek was exposed to asbestos-containing products manufactured, designed, sold or distributed by Lamons, Plaintiffs responded:

Plaintiffs contend that Decedent MICHAEL WALASHEK worked with

and around materials that were designed, manufactured, and/or distributed by the following entities: LAMONS GASKET COMPANY (sued individually and as successor-by-merger to LAMONS METAL GASKET CO.)

(Ex. C to Mansourian Decl.) Plaintiffs did not provide any specific facts regarding when, where, or how Walashek was exposed to asbestos-containing Lamons products.

Special Interrogatory No. 2 asked Plaintiffs to identify each document supporting Plaintiffs' contention that Michael Walashek was exposed to an asbestos-containing product manufactured, designed, sold or distributed by Lamons. In response, Plaintiffs did not identify any specific documents, but, rather, referenced Defendant's own records, an exhibit list of Plaintiffs, and Defendant's responses to interrogatories in other cases.

Special Interrogatory No. 3 asked Plaintiffs to identify any percipient witnesses with knowledge regarding Walashek's purported exposure to an asbestos-containing product manufactured, designed, sold, or distributed by Lamons. In their response, Plaintiffs identified Ron Gray, Jim Doud, and Frank Walashek as witnesses.[1]

---

[1] Plaintiffs also identified themselves. However, as discussed infra in Section III.C.1, Plaintiffs each agreed that they would not serve as product-identification witnesses.

During his deposition, Ron Gray testified that he had not ever heard of Lamons Gasket Metal Company. (Gray Dep. Tr. (Ex. D to Mansourian Decl.) at 770:5-10.) Gray confirmed that he had no reason to believe that Michael Walashek had ever been in the presence of any product manufactured or distributed by Lamons. (Id. at 770:11-15.) Similarly, Frank Walashek testified that he was unable to identify any work performed by Michael Walashek or work performed by others around Michael Walashek that involved Lamons Gasket products. (Frank Walashek Dep. Tr. (Ex. F to Mansourian Decl.) at 316:11-23.) Jim Doud also conceded that he lacked knowledge regarding any occasion when Michael Walashek installed Lamons gaskets, removed Lamons gaskets, or otherwise worked with Lamons gaskets. (Doud Dep. Tr. (Ex. E to Mansourian Decl.) at 307:5-20.)

Special Interrogatory No. 6 asked Plaintiffs to identify the location where Michael Walashek was allegedly exposed to an asbestos-containing Lamons product. (Ex. C to Mansourian Decl.) Plaintiffs responded that they did not have information responsive to the interrogatory.

Special Interrogatory No. 8 requested that Plaintiffs provide the dates of Michael Walashek's exposure to an asbestos-containing Lamons product. Again, Plaintiffs stated that they had no information responsive to the interrogatory.

Plaintiffs' discovery responses and the deposition testimony of purported witnesses do not provide any specific facts showing that Michael Walashek was exposed to asbestos-containing Lamons gaskets. Therefore, the Court holds that Lamons has satisfied its initial burden of production on its motion for summary judgment.

### 2. Plaintiffs Fail to Create a Genuine Issue of Material Fact

Because Lamons has carried its initial burden of production, the burden shifts to Plaintiffs, who must produce enough evidence to create a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Plaintiffs have failed to do so.

Plaintiffs attempt to create a genuine issue of material fact by relying on the deposition testimony of Jim Doud, who worked with Walashek at various job sites between 1972 and 1985. However, upon review of Doud's testimony, it is apparent that although Doud makes some *assumptions* about Michael Walashek working with Lamons spiral-bound gaskets, Doud does not have any specific knowledge that Walashek worked with or around Lamons gaskets.

Doud testified about a specific job in the 1970's on a Sea-land ship. He testified that the new spiral wound gaskets installed on the Sea-land ship came from *several* sources, including Lamons. (Doud Dep. Tr. (Ex. A to Barley Decl.) at

145:12-19.)[2] However, Doud could not specifically recall seeing Michael Walashek being present when spiral wound gaskets were installed. (Id. at 142:11-23.) Doud assumed Walashek would have been present because closing up a boiler is a collective effort. (Id.)

Doud also testified that he and Walashek ordered Lamons gaskets and that Walashek "would have installed their gaskets." (Id. at 305:17-18.) But Doud did not personally witness Walashek ordering Lamons gaskets. (Id. at 307:15.) Doud could not say that Walashek personally installed Lamons gaskets or removed them. (Id. at 307:2-7.) When asked, "So I just want to confirm, you don't have any knowledge that Mr. Walashek actually worked hands on with Lamons gaskets?" (Id. at 307:11-13.) Doud responded, "That is correct." (Id. at 307:14.)

Although Doud provided plenty of specifics regarding different types of Lamons gaskets, the packaging of the gaskets, how to install and remove the gaskets, and distributors for Lamons (id. at 333-340), Doud was testifying regarding his personal experiences with Lamons spiral-wound gaskets, not those of Walashek. In the course of testifying about his dealings with Lamons gaskets,

---

[2] Bill Grosse, who was designated to testify on behalf of Lamons, testified that the majority of spiral-wound gaskets sold by Lamons in the 1970's contained asbestos. (Grosse Dep. Tr. (Ex. B to Barley Decl.) at 87:10-15.) Lamons continued to manufacture and sell spiral-wound gaskets until 1992. (Id. at 174:12-21.)

Doud reconfirmed that he did not have any specific recollection of Walashek working directly with Lamons gaskets. (Id. at 336:2-5.)

Doud's belief that Walashek worked with Lamons spiral-wound gaskets is based on speculation. Doud has no knowledge about any specific time or place when Walashek worked around Lamons gaskets. Although it is possible that Walashek was exposed to a Lamons spiral-wound gasket, the "mere 'possibility' of exposure does not create a triable issue of fact." Andrews v. Foster Wheeler LLC, 138 Cal. App. 4th 96, 108 (2006). Therefore, the Court finds that Plaintiffs have failed to create a genuine issue of material fact with respect to threshold exposure to an asbestos-containing Lamons product, and grants Lamons' motion for summary judgment.

C. Parker

Parker is being sued individually and as the successor-in-interest to Sacomo Sierra and Sacomo Manufacturing Company (both Sacomo companies shall be referred to herein as "Sacomo"). Plaintiffs contend that while Walashek performed work on the USS Constellation and USS Kitty Hawk between 1974-1978, Walashek was exposed to asbestos-containing cloth manufactured and sold by Sacomo. As discussed below, the Court finds that Plaintiffs' evidence of

Walashek's exposure to Sacomo asbestos-containing cloth is insufficient to create a triable issue of fact.

### 1. <u>Parker Establishes Absence of Genuine Issue of Material Fact</u>

Parker moves for summary judgment on the ground that Plaintiffs have not produced any evidence in discovery that raises a triable issue of fact that Walashek was exposed to dust from a Parker product. Parker points to Plaintiffs' discovery responses and the deposition testimony of purported witnesses.

Parker propounded Special Interrogatories and a Demand for Inspection of Documents, seeking all facts, documents, and persons with knowledge of facts related to Plaintiffs' claims against Parker. (Exs. D & F to Cross Decl.) Plaintiffs' responses to this discovery failed to identify any facts, documents, or witnesses establishing Walashek's exposure to a Parker or Sacomo product. (Exs. E & G to Cross Decl.)

In response to Special Interrogatory No. 5, which asked Plaintiffs to state all facts supporting their contention that Walashek was exposed to asbestos from any Parker product, Plaintiffs stated, in relevant part:

> Plaintiffs contend that Decedent MICHAEL WALASHEK worked with and around materials that were designed, manufactured, and/or distributed by the following entities: PARKER-HANNIFIN CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to SACOMO MANUFACTURING CO.

and SACOMO-SIERRA, INC.  Plaintiffs are informed and believe decedent worked with and around SACOMO products from approximately 1972 to 1978 but Plaintiffs cannot identify a specific location or provide further descriptions of work activities involving same.  Plaintiffs are informed and believe Jim Doud, Frank Walashek, and/or Ron Gray may have information responsive to this interrogatory.

(Ex. E at 7.)  When asked to identify facts within the knowledge of any persons who saw or knew anything about Walashek working with a Parker product or within 100 feet of another person working with a Parker product, Plaintiffs responded that they "have no further information responsive to this Interrogatory at this time." (Responses to Interrogatory Nos. 2, 4, 7.)

Parker's Special Interrogatories and Demand for Inspection of Documents asked Plaintiffs to identify documents supporting Plaintiffs' contention that Walashek was exposed to asbestos from a Parker product.  (Special Interrogatory No. 8 (Ex. D); Demand for Inspection No. 2 (Ex. F)).  In response, Plaintiffs generally referred to documents such as prior discovery and records in Parker's possession, but did not identify any specific documents relating to Walashek's exposure to an asbestos-containing Parker product.  (Ex. E at 10-11; Ex. G at 5-7.)

The Special Interrogatories also asked Plaintiffs to identify persons with knowledge who could support Plaintiffs' claim that Walashek was exposed to asbestos from a Parker product.  (Special Interrogatories Nos. 1, 3, 6.)  Plaintiffs

identified themselves as well as Frank Walashek, Jim Doud, and Ron Gray. (Ex. E at 7.)

Each of Plaintiffs entered into stipulations that they would not be offering any testimony regarding the specific products that Walashek worked with or around during his lifetime. (Ex. H at 10:8-14; Ex. I at 8:15-25; Ex. J at 43:21-44:13; Ex. K at 47:9-22.) During their depositions, Frank Walashek, Jim Doud, and Ron Gray agreed that they did not have any personal knowledge about and would not be testifying regarding Walashek's work with and around the products of Parker or Sacomo. (Ex. K at 47:9-22; Ex. L at Ex. A; Ex. M at 393:5-396:14.)

In light of Plaintiffs' failure to provide any specific facts regarding Walashek's exposure to an asbestos-containing Parker product, the Court finds that Parker has satisfied its initial burden of production. Therefore, the burden shifts to Plaintiffs.

### 2. Plaintiffs Fail to Create a Genuine Issue of Material Fact

In opposition to Parker's motion, Plaintiffs present evidence that allegedly establishes: (1) Plant Products & Supply Company ("PPS") sold Sacomo asbestos-containing cloth; (2) M. Slayen & Associates, Inc. ("M. Slayen") purchased asbestos-containing cloth from PPS; (3) PPS was the only supplier of asbestos-containing cloth to M. Slayen in the 1970's; and (4) M. Slayen installed asbestos-

containing cloth on the USS Kitty Hawk and the USS Constellation, where Walashek performed work and was present when contractors removed insulation from pipes and reinsulated pipes. However, a close examination of Plaintiffs' evidence reveals that it falls short of creating a triable issue of fact regarding Walashek's exposure to an asbestos-containing Sacomo product.

Edward F. Plant, testifying on behalf of PPS, testified that beginning in 1970, Plant sold pipe insulation, including asbestos cloth. (Plant Dep. Tr. (Ex. C to Belantis Decl.) at 44:8-14.) PPS sold Sacomo asbestos-containing cloth. (Id. at 45:6-8.) However, PPS also sold other brands of asbestos containing cloth, including AMATEX, UNARCO, and H.K. Porter, as well as asbestos-containing cloth from the U.S. Government. (Id. at 47:17-48:25.) Mr. Plant could not recall the names of any PPS customers who purchased Sacomo cloth and did not have any specific knowledge of PPS selling Sacomo cloth to M. Slayen. (Id. at 119:16-120:11.) Mr. Plant did not have any estimate of the amount of Sacomo cloth PPS purchased or sold in an average year. (Id. at 121:12-18.) Mr. Plant had no knowledge where any of the Sacomo cloth purchased from PPS was used. (Id. at 19-22.)

M. Slayen purchased asbestos-containing cloth from PPS. (Id. at 68:23-25.) Mr. Plant testified that he could not provide information as to any other suppliers that M. Slayen obtained pipe insulation products from. (Id. at 94:3-7.) The Court

notes that Mr. Plant did not say that he had knowledge that PPS was the *only* supplier of asbestos-containing cloth to M. Slayen.  Indeed, it appears that there may have been other suppliers of asbestos-containing insulation, because Ronald Slayen, testifying on behalf of M. Slayen, stated that it was his impression that PPS was, if not the exclusive, a "major supplier" or "main supplier."  (Slayen Dep. Tr. (Ex. D to Belantis Decl.) at 146:13-19; 148:7-13.)[3]

During the 1970's, M. Slayen performed work on cruiser/destroyer vessels and carriers including the USS Kitty Hawk and USS Constellation.  (Slayen Dep. Tr. at 70:16-71:1.)   That work included work on the insulation systems and machinery, including the installation and removal of asbestos-containing materials.  (Id. at 71:6-17.)  As part of that work, M. Slayen installed asbestos cloth in addition to other types of asbestos-containing products.  (Id. at 71:24-72:9.)

During the 1974-1978 time period, there were times when Ron Gray worked with Walashek on the USS Constellation and the USS Kitty Hawk.  (Gray Dep. (Ex. B to Belantis Decl.) at 54:18-23.)  According to Gray, during those times, outside contractors removed insulation and reinsulated pipes in the presence of Gray and Walashek.  (Id. at 119:4-120:12.)  Gray did not know the brand or manufacturer of

---

[3] The Court overrules Parker's objections to the deposition testimony of Plant and Slayen, both of whom testified as corporate designees under Fed.R.Civ.P. 30(b)(6).

any of the insulation that was being applied to any of these pipes. (Id. at 120:8-12.) Gray recalls he and Walashek being present when M. Slayen employees were performing "rip-out." (Id. at 248:12-24.)

This evidence only shows that Walashek *may* have been exposed to Sacomo asbestos-containing cloth. The evidence is not of sufficient quality to permit the inference that Walashek *was* exposed to Sacomo asbestos-containing cloth. PPS sold various brands of asbestos-containing cloth during the time in question. There is no evidence that PPS sold Sacomo asbestos-containing cloth to M. Slayen. Nor is there evidence that a majority or even a substantial portion of the asbestos-containing cloth that PPS sold to others was manufactured by Sacomo. Furthermore, M. Slayen may have obtained asbestos-containing cloth from suppliers other than PPS. Finally, Gray did not testify that the M. Slayen employees were working with asbestos-containing cloth specifically, as opposed to other types of insulation, during the times Gray and Walashek were present.

This evidence "creates a dwindling stream of probabilities that narrow into conjecture." Lineaweaver v. Plant Insulation Co., 31 Cal. App. 4th 1409, 1421 (1995). Circumstantial evidence may, in some cases, support a reasonable inference of exposure. See, e.g., Lineaweaver, 31 Cal. App. 4th at 1420 (Lineaweaver established that Plant-supplied Pabco was definitely at his work site and was sufficiently prevalent to warrant an inference that Lineaweaver, who

worked throughout the refinery which had insulation over about two-thirds of its pipes and much of its equipment, was exposed to it during his more than 30 years working with and around the asbestos insulation).  Here, however, the evidence does not tend to show that Sacomo asbestos-containing cloth was on the USS Kitty Hawk and/or USS Constellation during the relevant time and does not support an inference that Walashek was exposed to Sacomo product.  See Lineaweaver, 31 Cal. App. 4th at 1421 (holding that evidence failed to show that appellants King and Ward were exposed to Pabco because testimony of insulators only showed that Pabco may have been minimally used as a "fill-in" at uncertain times aboard one out of every three or four of the one hundred ships serviced by the insulators); Izell, 231 Cal. App. 4th at 971 (holding that evidence only allowed speculation regarding exposure to asbestos through products manufactured by Kelly-Moore because Union Carbide was only a minor supplier of Kelly-Moore and there was no evidence regarding whether Izell was present when his workers sanded joint compound that might have contained Union Carbide asbestos, as opposed to asbestos from one of Kelly-Moore's other suppliers).

    It would not be reasonable to infer that Walashek was exposed to Sacomo asbestos-containing cloth when PPS may not have ever sold Sacomo cloth to M. Slayen, M. Slayen may or may not have used asbestos-containing cloth supplied by PPS on the USS Kitty Hawk and USS Constellation, and M. Slayen employees

may or may not have been working with asbestos-containing cloth when Gray and Walashek were present. Therefore, the Court concludes that Plaintiffs have failed to create a genuine issue of material fact with respect to threshold exposure to an asbestos-containing Sacomo product.[4]

## IV. CONCLUSION

For the reasons discussed above, the motions for summary judgment filed by Lamons Gasket Company [Doc. 252] and Parker-Hannifin Corporation [Doc. 234] are **GRANTED**. Because the Court finds that there is no just reason for delay, the Court orders the Clerk to enter final judgment in favor of Lamons Gasket Company and Parker-Hannifin Corporation.

**IT IS SO ORDERED.**

Dated: March 28, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court

---

[4] Both Lamons and Parker also moved for partial summary judgment, in the alternative, on the Plaintiffs' claim for punitive damages. The Court does not reach the punitive damages issue because the Court grants summary judgment on the issue of threshold exposure and causation.