UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL ELIZABETH WALASHEK, individually and as successor-in-interest to the Estate of MICHAEL WALASHEK and THE ESTATE OF CHRISTOPHER LINDEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS COPRORATION, et al.<br><br>Defendants. | Case No.:  14cv1567 BTM(BGS)<br><br>**ORDER GRANTING FRASER'S BOILER SERVICE, INC'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Fraser's Boiler Service, Inc. ("FBS") has filed a motion for summary judgment.  For the reasons set forth below, the Court **GRANTS** FBS's motion.

## I. BACKGROUND

On September 23, 2013, Plaintiffs commenced this wrongful death and survival action in state court.  On June 26, 2014, this action was removed to federal court.

The Complaint alleges that Michael Walashek's exposure to asbestos and asbestos-containing products, in the course of performing his work for various employers from 1967 through 1986, caused him to suffer severe and permanent injury and ultimately death.  The Complaint asserts claims of negligence, breach of warranties, strict liability, fraud, conspiracy, loss of consortium, and wrongful death.

Michael Walashek was a career boilermaker.  According to Walashek's Social Security Records, Statement of Earnings, Walashek's work history is as follows:

| Employer | Time Period |
| --- | --- |
| Fraser's Boiler Services, Inc. (San Diego) | 1972-1976 |
| Camass Company<br>● San Diego:  1976-1978<br>● Seattle:  1978-1980 | 1976-1980 |
| Fraser's Boiler, Inc.  (Seattle) | 1981-1986 |

(Def. Ex. 16.)  For purposes of this motion, FBS concedes that Fraser's Boiler Services, Inc., in San Diego and Fraser's Boiler, Inc., in Seattle are the same entity.

## II. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.

1    A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.  DISCUSSION

FBS moves for summary judgment on the ground that because Mr. Walashek claims that he was exposed to asbestos during the course and scope of his employment with FBS, Plaintiffs' claims are barred by California's workers' compensation exclusive remedy doctrine as well as the Longshore and Harbor Workers' Compensation Act ("LHWCA"). FBS also contends that to the extent Plaintiffs' claims fall outside the exclusive remedy afforded through the California Labor Code or LHWCA, the "sophisticated user" doctrine bars the claims. FBS moves, in the alternative, for partial summary judgment on Plaintiffs' claim for punitive damages.

Perhaps in an effort to avoid workers' compensation exclusivity, Plaintiffs take the position that "plaintiffs' claims at issue here occurred with [sic] Walashek was working for Camass – not Fraser Boiler." (Opp. at 15:28-16:1.) Plaintiffs allege that Walashek was exposed to asbestos dust caused and created by FBS while Walashek was employed by Camass and working aboard the USS Kitty Hawk and USS Constellation between 1976 and 1980. (Opp. at 1:4-12.)

However, Plaintiffs fail to establish a genuine issue of disputed fact with respect to whether Walashek was exposed to asbestos dust attributable to FBS while employed by Camass. As pointed out by FBS, Plaintiffs' discovery responses did not reveal any facts regarding FBS exposing Walashek to asbestos dust while he worked for Camass. See Plaintiffs' Responses to Standard Interrogatories, Response to Interrogatory No. 26 (Def. Ex. 3); Plaintiffs' Initial Disclosures at 26-27 (Def. Ex. 33); Plaintiffs' Responses to Special Interrogatories Propounded by Defendant Fraser's Boiler Service, Inc., Set One, Responses to Special Interrogatory Nos. 1 and 13 (Def. Ex. 12). Therefore, the burden shifts to Plaintiffs to show that a genuine issue of disputed fact remains regarding this issue.

Plaintiffs rely on the deposition testimony of witnesses to establish that Walashek worked around FBS workers on the USS Kitty Hawk and USS Constellation. But a close examination of the deposition testimony reveals that there is no reliable evidence that Walashek was ever a bystander to work performed by FBS on the USS Kitty Hawk and/or USS Constellation.

Plaintiffs point to testimony by Ron Gray as proof that Camass and FBS worked on the boilers on the USS Kitty Hawk and USS Constellation at the same time. However, Gray does not actually state that he and/or Walashek ever worked in the same space as FBS. The relevant portion of the deposition transcript is set forth below:

> Q. Were you personally involved in changing out the superheaters on all 16 boilers associated with these two ships?

> A. I couldn't specifically say all 16 on both ships. Some would go to one contractor; one time period we'd win the bid. And other times it would go to another company. It was just the two that was involved in those time frames, between Camass and Fraser's, here in San Diego.

(Gray Dep. (Pl Ex. B) at 95:11-19.)

It appears from this testimony that either Camass **or** FBS would win the bid during a specific time period. Although Gray testified that during the 1974-1978 time period he saw other contractors on the carriers, he did not identify FBS as one of the contractors. (Gray Dep. at 119:4-15.)

There is evidence that sub-contractors worked on boilers simultaneously as the prime boiler repair contractor. Gordon, a former employee of M. Slayen & Associates, an insulation contractor, testified that FBS would hire M. Slayen as a sub-contractor and their employees would work on the same ship. (Gordon Dep. at 174:18-175:17; 195:14-18.) James Doud similarly testified that he recalled seeing employees of Performance Contractors, Inc., an insulation subcontractor, on a Navy ship job he was performing with Walashek for Camass. (Doud Dep. at 221:12-20.) Doud also saw workers for other crafts, such as pipefitters, machinists and laborers, electricians, and ventilation workers. (Id. at 220:18-221:4.)

When asked whether there could be multiple boiler repair contractors – i.e., Fraser, Camass, and/or Marine – on a single ship, Gordon stated, "It can happen." (Id. at 180: 17-20.) However, it does not appear that Gordon's response was based on personal knowledge. Rather, Gordon was speculating about what might be possible.

Indeed, Frank Walashek, the decedent's brother, did not think that Camass and FBS ever worked together:

> Q: To your knowledge, did Cammas and Fraser Boiler ever work together in a boiler room on a ship?
> A. I don't believe so, they were competitors.

(Frank Walashek Dep. (Def. Ex. 34) at 444:19-23.) This testimony is supported by

1  Gordon's observation that there were three major boiler companies – Fraser,
2  Camass, and Marine Boiler.  (Gordon Dep. at 179:9-16.)
3      The Court concludes that Plaintiffs have not raised a triable issue of material
4  fact with respect to whether Walashek was exposed to asbestos dust attributable
5  to FBS while working for Camass.  Therefore, the Court grants FBS's motion for
6  summary judgment.

### IV.  CONCLUSION

For the reasons discussed above, Fraser's Boiler Service, Inc.'s Motion for Summary Judgment is **GRANTED**. Because the Court finds that there is no just reason for delay, the Court orders the Clerk to enter final judgment in favor of Fraser's Boiler Service, Inc.

**IT IS SO ORDERED.**

Dated:  April 25, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court